## PORTER *v.* OSMUN.

1. Adverse Possession—Life Estates—Tenancy in Common.
   The possession of a grantee of a life tenant and part of the remaindermen cannot be adverse to the other remaindermen prior to the termination of the life estate.

2. Ejectment—Title—Equity.
   A claimant under a primary school certificate cannot maintain ejectment against a patentee of the land from the State, but equity is the proper forum for relief.

### ON SETTLEMENT OF DECREE.

1. Estates in Land—Vested Remainders.
   Where land was conveyed to one for life, with remainder to his "heirs," an estate at once vested in the children of the grantee, so that, on the death of one of them prior to the father's death, his interest descended to his heirs.

2. Tenancy in Common—Life Tenant—Compensation for Improvements.
   One in possession of land as tenant for the life of another, though a co-owner of the remainder, is not entitled, as against the other remaindermen, to compensation for improvements made during the continuance of the life estate, even in a court of equity.

Appeal from Oakland; Smith, J. Submitted November 5, 1903. (Docket No. 88.) Decided January 5, 1904. Additional opinion on settlement of decree March 15, 1904.

Bill by Ella Porter against Oliver H. P. Osmun, Nettie Van Kuren, Dorsey Osmun, and others, for a partition. From a decree dismissing the bill, complainant appeals. Reversed.

*William E. Crane*, for complainant.

*Patterson & Patterson*, for defendant Oliver H. P. Osmun.

CARPENTER, J. In 1849 complainant's grandfather, Israel Osmun, purchased a primary school certificate, which gave him the right to a patent from the State conveying the land in controversy. In 1856 said Israel Osmun conveyed said land to complainant's father, John Osmun, "during his natural life, and to his heirs thereafter forever." In 1877 complainant's grandfather, father, mother, brother (defendant Dorsey Osmun), and sister (defendant Nettie Van Kuren) united in a deed conveying said land to defendant Oliver H. P. Osmun. On the 10th of the following May said defendant Oliver obtained a patent from the State conveying to him the land in controversy, and paid the requisite consideration therefor. John Osmun died in May, 1901, leaving surviving him three children, viz., complainant, and defendants Dorsey Osmun and Nettie Van Kuren. Shortly thereafter, complainant, claiming that she is entitled to one-third of said land, commenced this suit in chancery, praying an accounting and partition. The learned trial judge dismissed her bill of complaint, and complainant appeals to this court.

No question is made that the term "heirs" in the deed of 1856 designated the children of said John Osmun. It is, however, contended that complainant's right in the land is barred by the statute of limitations, and that equity will not afford relief.

The statute of limitations, in our judgment, has no application. Complainant had no possessory right in the land until her father's death, in 1901. The possession of

defendant Oliver H. P. Osmun, until that time, was in no
sense adverse to complainant.

It is equally clear that complainant must seek relief in
equity, and not at law.  By obtaining the patent from the
State in 1877, defendant Oliver H. P. Osmun acquired the
legal title.  Complainant could not assert her rights against
this title in a suit in ejectment.  *Moran* v. *Moran*, 106
Mich. 8 (63 N. W. 989, 58 Am. St. Rep. 462), and cases
cited.

As no other answers are made to the claim asserted by
complainant, and as we can conceive of none, it follows
that she is entitled to a decree.  The decree of the court
below will be reversed, and complainant given a decree
for an accounting and partition, as prayed.  The record
will be remanded for further proceedings under this de-
cree.

The other Justices concurred.

### ON SETTLEMENT OF DECREE.

CARPENTER, J.  On the settlement of the decree in this
case, some questions have arisen which demand discus-
sion.

1. What interest has complainant in the land in con-
troversy?  Besides the three children of John Osmun
mentioned in the opinion, there was a fourth,—Elizabeth
Malby.  Elizabeth Malby died September 18, 1883, leav-
ing a child, Roy Malby, who died October 16, 1883.  The
heir of said Roy Malby was his father, Charles, who, since
the decision of this case, has conveyed his interest to de-
fendant Oliver.  It will be observed from these dates that
the daughter, Elizabeth, and her child, Roy, died before
the owner of the life estate, John Osmun.  If Elizabeth
had a vested interest which passed to her heirs on her
death, complainant is entitled to but one-fourth of the
property in controversy; otherwise she is entitled to one-
third.  We think the estate of Elizabeth was a vested es-
tate, under section 8795, 3 Comp. Laws (see, also, *Hitch-*

*cock* v. *Simpkins*, 99 Mich. 198 [58 N. W. 47]), and that such estate, under section 9064, descended on her death to her child, and on the death of the child to its father, Charles Malby. It results that the interest of complainant in the land in controversy is an undivided one-fourth.

2. Is defendant Oliver entitled to an allowance for improvements? Those improvements were made while the defendant was in possession as a tenant of the life estate of John Osmun, and at the same time owning an undivided half of the remainder. This precise question was determined by this court in *Curtis* v. *Fowler*, 66 Mich. 696 (33 N. W. 804). The court denied the right to an allowance for improvements, saying:

" As tenant in common and purchaser in possession under the deed from Melissa Curtis, conveying her life estate, the defendant was not entitled to recover for improvements made upon the premises previous to the death of Melissa. As plaintiffs admitted that defendant was entitled to compensation for improvements made after her death, we do not pass upon that question. But where defendant was entitled to hold possession of the whole premises as life tenant, he cannot recover for compensation for improvements made as such tenant. This is because the life tenant is bound to keep the premises in repair, and is not permitted to commit waste; and any improvement such tenant makes, of a permanent character, inures to the benefit of the remainderman. It is true that at the same time he held an undivided interest of the land as tenant in common, but he was bound to know the nature and extent of the title he purchased, and that he only obtained by his deed from Mrs. Curtis an undivided one-fourth of the fee. And he could not, while holding his co-tenants out of possession as life tenant, acquire any adverse rights to them by virtue of his being a tenant in common with them. The statute relative to compensation for improvements does not apply to such a case."

*Curtis* v. *Fowler* was an ejectment suit, and was, as indicated in the above quotation from the opinion, governed by the statute. If this were a suit at law, that decision would be decisive against defendant. But it is held (see *Ford* v. *Knapp*, 102 N. Y. 140 [6 N. E. 283, 55 Am.

Rep. 782]; *Hewlett* v. *Wood,* 62 N. Y. 75) that in equity
the rule is more favorable to those claiming allowances
for improvements. In *Killmer* v. *Wuchner,* 79 Iowa,
722 (45 N. W. 299, 8 L. R. A. 289, 18 Am. St. Rep. 392),
on facts much like those in the case at bar, an allow-
ance was made for improvements. That decision, how-
ever, is placed upon the ground that the tenant for the life
estate in possession had a deed which in form conveyed
the fee, and he in good faith made the improvements, sup-
posing himself to be the owner of the fee. We think these
circumstances distinguish the Iowa case from the case
at bar, and make the principles of that case inapplicable.
We are bound to infer from the record that defendant
Oliver, when he purchased, knew that his brother John
only had a life estate, and that he knew that complainant
had an interest in the remainder.

In support of his claim that he should be allowed for
improvements, defendant cites cases in which a co-tenant
in possession has received such allowance. The likeness
between cases of that character and the case at bar arises
from the circumstance that, though the defendant Oliver
Osmun was in possession as a tenant for the life of his
brother John, he was also one of the co-owners with com-
plainant of the remainder. Those cases, viz., cases in
which a tenant in common in possession has received al-
lowance for improvements, differ from this in many par-
ticulars. In those cases there is justice in saying, and it
has been said (see *Ford* v. *Knapp,* 102 N. Y. 140 [6 N.
E. 283, 55 Am. Rep. 782]), that the tenant out of posses-
sion, by his unthrift and neglect, has compelled the ten-
ant in possession to make the improvements. That can-
not be said in a case like that before us, where the com-
plainant had no right whatever to possession. When such
a co-tenant receives an allowance for improvements, he is
chargeable with rent. See *Eighmey* v. *Thayer* (decided
March 8, 1904), *post* (98 N. W. 734). Here defendant
claims that allowance freed from any such obligation.
This distinction has a most important bearing upon the
equities of the case. By this allowance of rent before par-

tition, and by the subsequent partition, the tenant in common who did not participate in making the improvements receives their full benefit. That is not the case where a tenant for life has had, as in this case, the use of those improvements for 24 years. It is not at all improbable that he has been fully compensated for them in the enhanced rental value during this time. It certainly is inequitable that he should be repaid for them a second time because, perhaps, those improvements now enhance the value of the property.

If defendant had owned no other interest than a tenancy for life, his claim for improvements would have had no foundation whatever. As a co-owner of complainant in the remainder, he had no possessory right. As such co-owner, he had no right to make these improvements. As such co-owner, he derived no benefit from their erection. We think we are bound to say that he made these improvements, not because of his interest in the remainder, but because of his possession under the life estate. The equitable principle which permits a tenant in common to charge his co-tenant for improvements has, therefore, in our judgment, no application. This conclusion is supported by *Scott* v. *Guernsey*, 48 N. Y. 106. There, during the existence of a life estate, one of the co-owners of the remainder, by the consent of the life tenant, and without the consent of the other remaindermen, made improvements upon the property. In a suit for partition, it was held that no allowance should be made for these improvements, the court saying:

"The appellants are not within the reason of any of the adjudged cases where relief has been granted in partition for money expended in improvements by one of several tenants in common."

We are therefore of the opinion that defendant is entitled to no allowance for improvements.

The other questions arising upon the settlement of the decree do not demand discussion.

The other Justices concurred.