No. 55,004

ROBERT L. HALL and JAMES W. HALL and NINA L. HALL, Husband and Wife, *Appellees/Cross-Appellants,* v. BEVERLY J. HAMIL-TON, *Appellant/Cross-Appellee.*

(667 P.2d 350)

Opinion filed July 15, 1983.

*Kenneth P. Soden,* of Soden & Isenhour, P.A., of Mission, argued the cause, and *William O. Isenhour, Jr.,* and *John M. Cox,* of the same firm, were with him on the briefs for appellant/cross-appellee.

*Rod L. Richardson,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause and was on the briefs for appellees/cross-appellants.

The opinion of the court was delivered by

MILLER, J.: This is an action for the partition of real property, the title to which is held in joint tenancy. The plaintiffs are Robert and James Hall, and James's wife, Nina. The defendant is Beverly J. Hamilton, sister of Robert and James. Robert, James and Beverly are the owners as joint tenants of the property which is the subject of this action, a lot in Prairie Village, Kansas, upon

which there is a single family dwelling. The defendant, who occupies the residence, opposed partition, and upon the entry of an order of partition by the Johnson District Court, she appeals.

The issues, simply stated, are: Is joint tenancy real estate subject to involuntary partition? Did the trial court err in assessing attorney fees?

The real property in question was originally owned by Newton and Maurine Hall, parents of the parties to this action. Mr. and Mrs. Hall conveyed the property by warranty deed to their three children, Robert, James and Beverly, as joint tenants with the right of survivorship and not as tenants in common, in 1969. Mr. and Mrs. Hall continued to live in the home. Mr. Hall died in January, 1973. Shortly thereafter, and at the request of Mrs. Hall, Beverly moved into the home. She resided with and cared for her mother until the mother died in December, 1980. Beverly continues to reside in the home; she refuses to consent or agree to the sale of the property, and as a result her brothers have been unable to either rent or sell it. The brothers commenced this action for partition of the property in May, 1981.

Both sides moved for summary judgment. The trial court overruled defendant's motion and granted plaintiffs' motion for summary judgment. It appointed commissioners, who found that the property could not be partitioned in kind, and appraised it at $44,950. The plaintiffs jointly elected to take the property at the appraised valuation, and the court confirmed that election. It then fixed the amount of expenses to be paid out of the proceeds, including court costs, commissioners' fees and title policy expense. Attorneys for plaintiffs sought fees of $4,444.19 and present and former counsel for the defendant sought the allowance of fees totalling $10,196.65. The trial court determined that the total of the attorney fees sought would be approximately 32% of the value of the property and that the allowance of this amount would be unconscionable and inequitable. For this reason, the court allowed total attorney fees of only $6,000 to be taxed as costs. The court directed that this amount be divided so that two-thirds or $4,000 would go for the payment of plaintiffs' attorney fees and one-third or $2,000 would go to the payment of defendant's attorney fees. Finally, the trial court ordered that a sheriff's deed issue to the plaintiffs. Defendant appeals from the order of partition, and from the trial court's order reducing the

amount of attorney fees claimed and dividing the reduced amount two-thirds to plaintiffs' attorneys and one-third to defendant's counsel. Plaintiffs cross-appeal from the order allowing attorney fees.

The first issue, although divided in the briefs into several arguments, is simply whether real property held in joint tenancy may be the subject of involuntary partition. The trial court ruled that this court's opinion in the case of *Miller v. Miller*, 222 Kan. 317, 564 P.2d 524 (1977), is determinative of this issue; defendant seeks to distinguish the *Miller* case, and contends that the trial court erred in relying upon it.

In our unanimous opinion in *Miller*, we said:

"Partition provides a method whereby two or more persons who own property together may put an end to the multiple ownership, so that each may own a separate portion of the property or, if a division in kind is not feasible, the property may be sold and each owner given an appropriate share of the proceeds. It is said to be a right much favored in the law because it secures peace, promotes industry and enterprise, and avoids compelling unwilling persons to use their property in common. 59 Am. Jur. 2d, Partition, sec. 3, p. 773. The right of partition is said to be an incident of common ownership. 68 C.J.S., Partition, sec. 21, p. 33.

"Justice Wedell, quoting from *Fry v. Dewees*, 151 Kan. 488, 99 P.2d 844, in *Holland v. Shaffer*, 162 Kan. 474, 178 P.2d 235, said:

" ' "As a general rule, a tenant in common of a fee-simple estate in real property is entitled to partition as a matter of right. Such right, however, is subject to the full power of the court to make a just and equitable partition between the parties and to secure their respective interests." ' (p. 479.)

"He went on to say:

" ' . . . The right of partition is considered an incident of common ownership. It is based on the equitable doctrine that it is better to have the control thereof in one person than in several who may entertain divergent views with respect to its proper control and management. The general rule therefore is that all property capable of being held in cotenancy is subject to partition by judicial proceedings, the partition being either in kind or by appraisal and sale. . . .' (p. 480.)

"A joint tenant is a cotenant owning an undivided interest in property, and partition may be had as between joint tenants to the same extent as between tenants in common.

"The trial courts necessarily exercise wide judicial discretion in partition actions, but that discretion is exercisable primarily in the area of making a fair and just division between the parties. Courts may deny partition in order to prevent the remedy from becoming an instrument of fraud or oppression (*Holland v. Shaffer*, supra, p. 482) but we do not have that situation in the case before us. The claimed inequitable conduct of the plaintiff does not amount to fraud, and has no direct bearing upon the partition action. We conclude that the trial court did not abuse its discretion in directing partition of the property." 222 Kan. at 320.

Appellant contends that the quoted language in *Miller* is dicta. We do not so read the opinion. The action was one in partition; one joint tenant defaulted and another objected in part to partition; and the latter appealed from the trial court's final order. Whether the remedy was available was not directly challenged as it is in this case, but that issue was a matter of prime importance which had to be determined before the other issues on appeal could be decided.

Appellant also attempts to distinguish the *Fry v. Dewees*, 151 Kan. 488, 99 P.2d 844 (1940) and *Holland v. Shaffer*, 162 Kan. 474, 178 P.2d 235 (1947) cases, cited in the *Miller* opinion, arguing that they involve partition of mineral rights and thus are not applicable here. The quoted portions, however, state general principles of law which are applicable to the issues considered in *Miller*, and to the case at bar.

Appellant also contends that the trial court erred in relying on K.S.A. 60-1003 as establishing a "right" to partition. That statute establishes the procedure to be followed in a partition proceeding; it does not purport to establish substantive rights to partition. The right of a joint tenant, however, to sever his interest, to dispose of his share by conveying it to a third person, or to seek partition under the appropriate statutes, is widely recognized. Judge Gard, in his Kansas Code of Civil Procedure 2d Annot. § 60-1003 (1979), makes the following observations on the issue presented here:

"Doubt has been expressed among lawyers now and then as to the use of judicial partition between joint tenants of real property, and the question raised of whether the joint ownership must first be served by mutual consent or by a conveyance of one of the joint owners. There has never been any real doubt on this matter, and a partition action will lie as between joint owners, both under this statute and under the former law. See Berry v Berry's Estate, 168 K 253, 212 P2d 283, quoting 14 Am Jur (1st ed) § 14, Cotenancy. See 20 Am Jur 2d, Cotenancy and Joint Ownership § 20." p. 41.

In *Berry v. Berry*, 168 Kan. 253, 212 P.2d 283 (1949), we said:

"The authorities are virtually unanimous in agreeing that a joint tenant may at his pleasure dispose of his share and convey it to a stranger and that such conveyance will result in a severance or termination of the joint tenancy. *McDonald v. Morely*, 15 Cal. (2d) 409, 101 P.2d 690, 129 A.L.R. 810, and Annotation commencing at 129 A.L.R. 813. See, also, 14 Am. Jur., Cotenancy, § 14, p. 86, where it is said:

" 'A joint tenancy may be severed, either voluntarily, as by a partition of the property, or a conveyance of the interest of any joint tenant, or involuntarily, as by an execution sale of any interest that is subject thereto.' " 168 Kan. at 256.

William L. Burdick, in his Law of Real Property (1914), states the rule as follows:

"Joint estates may be so created that partition of them cannot be had; but, in absence of such a provision, *any joint estate*, except estates in entirety, *may be divided at the suit of one of the tenants without the consent of the others.*" p. 274. (Emphasis supplied.)

Estates in the entirety were abolished in Kansas in 1891 (see K.S.A. 58-501 and G.S. 1935, 22-132). In the case at hand, there is no indication that the instrument creating the joint tenancy contained any provisions restricting the rights of the joint tenants to seek partition of the property.

20 Am. Jur. 2d, Cotenancy and Joint Ownership § 20, discusses partition of joint tenancy real property as follows:

"A joint tenancy terminates where a complete partition of the property has been obtained, whether by decree of court or otherwise. . . . [T]he mere commencing of an action for partition of joint-tenancy property does not serve to terminate the tenancy; only the judgement or decree has that effect."

The general rule is stated in 68 C.J.S., Partition § 28:

"Joint tenancies and tenancies in common are subject to partition. Partition can be had only of property which is held in cotenancy, and there can be no partition of property which is not held in joint tenancy, tenancy in common, or coparcenary."

In support of these statements that partition can be had of property held in joint tenancy, cases are cited from eighteen states; we have not found any current authorities to the contrary. See *Yunghans v. O'Toole,* 199 Neb. 317, 258 N.W.2d 810 (1977); *Nichols v. Nichols,* 43 Wis. 2d 346, 168 N.W.2d 876 (1969); and *Stout v. Stout,* 564 S.W.2d 89 (Mo. App. 1978), all of which support the rule last stated above.

Appellant asserts that a holding that a joint tenant may force partition upon unwilling cotenants will be responsible for all sorts of rifts in the social fabric, but appellant cites no authority to support that argument. On the contrary, given the facts presented at bar, it is clear that partition represents the only equitable solution. Partition in this case accomplishes the goal of avoiding "compelling unwilling persons to use their property in common." It also prevents one joint tenant from enjoying the benefit of the property to the practical exclusion or detriment of the others.

It is undisputed that any joint tenant may sever his or her joint tenancy interest in real property by conveying the interest to a third person, or by mortgaging the joint tenancy interest, or—in some jurisdictions—by leasing that interest. Once the joint tenancy interest is severed, a tenancy in common results. Requiring a joint tenant to sever the joint tenancy interest *before* bringing an action in partition would serve no useful purpose, and it is often said that the law will not require the doing of a useless act. Severance is accomplished in the partition action by the court's order of partition; we see no need to require a prior severance. We adhere to our ruling in *Miller*, hold that joint tenancy interests in real property are subject to involuntary partition, and conclude that the trial court did not err in ordering partition of the jointly held real estate.

We now turn to the matter of the determination and assessment of attorney fees. K.S.A. 60-1003(c)(5) makes the following provisions regarding attorney fees in partition actions:

"The court making partition shall tax the costs, attorney fees and expenses, including an allowance for preparation or bringing up to date of an abstract of title or title insurance to the real estate involved in the action, which may accrue in the action, and apportion the same among the parties according to their respective interests, and may award execution therefor, as in other cases."

As we noted earlier, the trial court reviewed the attorney fees claimed by the parties and, though not finding the fees claimed excessive or unreasonable, found that it would be unconscionable and inequitable to allow the assessment of the total fees requested against the property. The court also found that "the prosecution of this action by the plaintiffs and its defense by the defendant, all cotenants, and even though adversarial in nature, was still for the common benefit of all the cotenants, both plaintiffs and defendant." The court then fixed the fees and allowed them in the stated amounts "as a matter of equity and good conscience."

Defendant objects to the court's ruling, arguing that the statute imposes a mandatory obligation upon the trial court to assess all reasonable attorney fees against the partitioned property. Since the court did not find the fees unreasonable, defendant concludes that the trial court was without power to adjust the fees. Defendant also argues that the two-thirds, one-third division of the fee award is contrary to the statute. Further, defendant

argues that if the court was correct in reducing the amount claimed for attorney fees, the court should have prorated the reduced amount upon the basis of the attorney fees claimed, and thus defendant's counsel should have been awarded approximately 70% of the reduced amount, leaving approximately 30% to plaintiffs' counsel. Alternatively, defendant argues that it would have been more equitable to divide the reduced amount equally between plaintiffs' attorneys and defendant's attorneys rather than the two-thirds, one-third division adopted by the trial court.

Plaintiffs, by way of cross-appeal, also argue that the trial court's order regarding attorney fees was erroneous. They contend that the common benefit doctrine is controlling, and that only those attorneys whose services were for the common benefit of all cotenants should be compensated from the common fund.

A review of the law in this area is helpful in resolving these issues. We have held many times that, "The reasonable value of attorneys' fees rests within the sound judicial discretion of the trial court and its determination will not be disturbed in the absence of an abuse of discretion." *Buchanan v. Employers Mutual Liability Ins. Co.*, 201 Kan. 666, Syl. ¶ 10, 443 P.2d 681 (1968); *Brown v. Continental Casualty Co.*, 209 Kan. 632, 641, 498 P.2d 26 (1972). Trial courts have often been held to be experts on the subject of the value of legal services, and the judge may apply his or her own knowledge gained from professional experience in determining the value of the legal services rendered. *City of Wichita v. Chapman*, 214 Kan. 575, Syl. ¶ 6, 521 P.2d 589 (1974). Syllabus ¶ 7 of that opinion is also particularly applicable. It reads:

"The circumstances to be considered in determining the amount of a reasonable attorney fee are the amount and character of the services rendered; the labor, time and trouble involved; the nature and importance of the litigation or business in which the services were rendered; the responsibility imposed; the amount of money or the value of the property affected by the controversy, or involved in the employment; the skill and experience called for in the performance of the services; the professional character and standing of the attorney and the results secured."

Of the cases decided under K.S.A. 60-1003(c)(5) and its predecessors, we should consider *Sarbach v. Newell*, 35 Kan. 180, 10 Pac. 529 (1886), a partition action in which the plaintiff objected

to the order directing payment of costs and attorney fees. The plaintiff was the owner of a 2/11 interest in the property, without the enhancement of a stone building thereon; defendants owned the 9/11 interest, including the enhancement attributable to the building. The trial court ordered that the amount attributable to the stone building be first paid out of the proceeds to the defendants; that the attorney fees and costs be then paid out of the remaining proceeds; and that the balance remaining be then distributed to the parties according to their respective interests. Plaintiff appealed, contending that the expenses, costs and attorney fees should be paid first out of the entire sale proceeds, and that the remainder should then be divided according to the interests of the parties. The amount allowed as attorney fees was ordered divided equally between attorneys for the plaintiff and the defendants; there was no objection on appeal to that portion of the trial court's order. The Supreme Court reversed. Justice Valentine, speaking for a unanimous court, said:

"The statute relating to costs in actions for partition reads as follows:
" 'Sec. 628. The court making partition shall tax the costs, attorney's fees and expenses which may accrue in the action, and apportion the same among the parties, according to their respective interests, and may award execution therefor, as in other cases.' (Civil Code, § 628.) [G.S. 1868, Ch. 80, § 628.]
"We think the claim of the plaintiff is substantially correct, both under the statute and under the order of the supreme court made at its January term, 1833. (*Sarbach v. Newell*, 30 Kas. 104.) The costs, attorney's fees and expenses should first be paid out of the entire proceeds of the sale of the property, and then the parties should receive their respective shares out of the remainder of the proceeds. By such a distribution and apportionment, the costs, attorney's fees and expenses, as well as the amounts to be paid to the parties, would be apportioned 'among the parties according to their respective interests.' " 35 Kan. at 184-85.

In *Eresch v. Guipre,* 142 Kan. 747, 51 P.2d 1016 (1935), this court discussed the common-benefits doctrine but did not actually base its decision upon it. There, the plaintiff brought the action to partition some 560 acres of land in Cloud County and a quarter section of land in Mitchell County. The trial court found that the Mitchell County land was not subject to partition but was owned by one of the appellees, Andrew Guipre. Title to that quarter section was quieted in his name. The remaining or Cloud County land was partitioned. All costs were ordered apportioned among the parties in accordance with their respective interests. Appellees objected to that portion of the order which appor-

tioned that part of the costs incurred in litigating the question as to the ownership of the Mitchell County land. This court said:

"R.S. [1923,] 60-2113 provides:

" 'The court in making partition shall tax the costs, attorney fees and expenses which may accrue in the action, and apportion the same among the parties according to their respective interests,' etc.

"In discussing this section of the code, it is said in Dassler's Kansas Civil Code, Annotated (2d ed.):

" 'The costs, attorney fees and expenses made by one claiming an interest in the property and failing to establish same, should not ordinarily be allowed and taxed against the property involved. The basic principle that should govern in the allowance and apportionment of costs, attorney fees and expenses, to be paid from the property or its proceeds, would seem to be that the same be such as were necessarily incurred for the benefit of the cotenants, in order to effect a partition of the property. Outside of such, the costs, attorney fees and expenses should be taxed and paid as in other civil actions.' (p. 959.)

"None of our decisions are cited in support of the text, although many cases supporting the statement may be found in the annotation in 73 A.L.R. 21, 26, where the common-benefit doctrine and the effect of the title at issue are discussed. (See *Sarbach v. Newell,* 35 Kan. 180, 10 Pac. 529, which treats costs in partition actions.)

"It will be observed that as to the Mitchell county land there was no partition, and so far as these lands are concerned, appellants had no title. Had the action been brought solely to try title, appellants would not have been entitled to costs unless they had prevailed. (R.S. [1923] 60-3704, 60-3705.) We are of the opinion that the costs incurred in determining the title to the Mitchell county lands should be adjudged in favor of appellees and against appellants." 142 Kan. at 753-54.

We have not failed to review the cases from other states cited by counsel, but we do not find them persuasive. The common-benefit doctrine is the subject of many varying interpretations based upon common law and statutory differences between the states. Each jurisdiction has adopted its own rules for the allowance or refusal to allow attorney fees in partition actions, and we see no compelling reason to adopt or base our holding here upon the rules adopted elsewhere.

The allowance of attorney fees in a partition action in this state is a matter resting in the sound judicial discretion of the trial court. The court is not required, by our statute, to allow every fee which is claimed; the court must exercise its discretion in the fixing and allowance of fees. A trial court is not required to allow—as the trial court below declined to allow—fees in amounts which it finds to be unconscionable and inequitable. That portion of K.S.A. 60-1003(c)(5) which requires the apportionment of fees and costs "among the parties according to their

respective interests" does not require the trial court to fix and allow the fee of an attorney solely upon the fractional interest the attorney's client has in the partitioned property; that is but one factor to be considered. Similarly, the common benefit attributable to the services is but a single factor to be considered.

In fixing and allowing reasonable, fair and just attorney fees in partition actions, the trial courts should take into consideration many factors. Among others, these frequently include the facts of the particular case; the amount of work reasonably required to be done by the attorneys; the benefit common to all of the parties or co-owners as a result of the work of counsel; the amount and character of the services rendered; the labor, time and trouble involved; the nature, difficulty and importance of the issues; the skill and experience called for in the performance of the services; the professional character and standing of the attorneys; the extent and value of the property; the interests of the respective parties; the responsibility necessarily imposed upon and shouldered by the respective attorneys; and the results secured. Once fees, costs and expenses are determined, payment out of the entire proceeds of sale of the property, as approved in *Sarbach*, ordinarily will effectively apportion the costs "among the parties according to their respective interests." We note here that the partition statute grants to the trial court the "full power to make any order not inconsistent with the provisions of this article that may be necessary to make a just and equitable partition between the parties." K.S.A. 60-1003(*d*). Resting the matter of attorney fees in the trial court's discretion is consistent with the provisions of this statute. .

The experienced trial judge below expressed his recognition of a number of the factors listed above, and no doubt considered many others. We find no abuse of discretion.

The judgment is affirmed.